**Donald RAULERSON,**
**Petitioner–Appellant,**

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

**No. 88–5648.**

United States Court of Appeals,
Eleventh Circuit.

May 21, 1990.

Bruce S. Harvey, Atlanta, Ga., for petitioner-appellant.

Dexter W. Lehtinen, U.S. Atty., Harriett R. Galvin, Linda Collins–Hertz, Frank O. Bowman, III, Asst. U.S. Attys., Miami, Fla., for respondent-appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we affirm the district court's ruling that the government did not breach a plea agreement. Although we affirm, the case is remanded for further proceedings.

## FACTS

On July 31, 1981, a grand jury in the Southern District of Florida indicted Donald Raulerson, the appellant, on fifteen drug-related counts, including management of a continuing criminal enterprise. Pursuant to a plea agreement, Raulerson pleaded guilty to three counts of the indictment.[1] The plea agreement is embodied in two documents: a "Plea Agreement" presented in open court on December 14, 1981, and a "Supplemental Plea Agreement" filed the same day under seal to protect Raulerson's safety and the secrecy of ongoing investigations.[2]

Prior to Raulerson's indictment in the Southern District of Florida, the government had initiated *in rem* forfeiture actions against certain of Raulerson's property. Pursuant to the plea agreement, Rau-

lerson forfeited approximately $7 million of property to the United States.

On May 7, 1982, in the Southern District of Florida, the district court sentenced Raulerson to ten years imprisonment on Count I, and to 5-year terms on Counts II and V. Pursuant to the plea agreement, the two 5-year terms ran consecutively with each other, and concurrently with the ten-year sentence; the entire sentence in Florida was ordered to run concurrently with a thirteen-year sentence in Tennessee. Raulerson's sentence included $15,000 fines on Counts II and V.

Subsequent to imposition of sentence, Raulerson filed a Rule 35 motion to modify the sentence.[3] On July 29, 1982, the Florida district court granted that motion in part by vacating the fines and by specifying that the sentences on Counts II and V were imposed pursuant to 18 U.S.C. § 4205(b)(2).[4] The order effectively elimi-

---

**1.** The plea agreement incorporates references to criminal proceedings in Tennessee. In March, 1982, the district court sentenced Raulerson to thirteen years for his conviction in Tennessee on drug-related charges. One year later, a grand jury indicted Raulerson a second time in the Western District of Tennessee on drug charges. A jury convicted Raulerson, and the district court sentenced him to a forty-two month sentence (later reduced to eighteen months) to run consecutively with the thirteen-year sentence. Under the plea agreement, the government promised to describe Raulerson's cooperation in sentencing proceedings in both Florida and Tennessee.

**2.** The supplemental agreement contained the following provisions:

4. The United States agrees that, if[,] in its judgment, Donald Raulerson has complied with his responsibilities under this agreement, within 120 days of the defendant's sentencing in case number 81–330–Cr–CA, it shall move to dismiss Count I of the Indictment and the Court shall dismiss Count I and vacate the sentence....

5. The United States agrees that a letter will be sent to the appropriate United States Department of Justice official requesting that the defendant's property located at Route 3, Box 505C, Trowbridge Road, Fort Pierce, Florida 33450, more fully described in attachment A of indictment 81–330–Cr–CA, be returned to him unencumbered by any seizure previously accomplished by the government.

6. The United States agrees to inform both sentencing judges *in camera* ... through the offices of the United States Attorney for the Southern District of Florida, the Western Dis-

trict of Tennessee, and the offices of the Federal Bureau of Investigation of the factual extent, nature, degree and quality of the defendant's cooperation under this agreement. Samuel J. Smargon, Timothy Discenza, Hickman Ewing, and W. James Franklin will personally appear at all sentencing hearings pursuant to this agreement in Case 81–20035W.
. . . .
10. The plea agreement and this supplemental plea agreement constitute the entire agreement between the parties. No additional promises, agreements and conditions have been entered into other than those set forth in these agreements and none will be entered into unless in writing and signed by all parties.

**3.** For offenses committed prior to November 1, 1987, Rule 35 of the Federal Rules of Criminal Procedure provides in part:

(b) Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed....

**4.** Title 18 U.S.C. § 4025(b) provides that:

Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed

nated the requirement of 18 U.S.C. § 4205(b)(1) that a prisoner serve at least one-third of the stated sentence, and rendered Raulerson eligible for immediate parole on the Florida sentence. Shortly thereafter, the court granted the government's motion to dismiss Count I of the indictment and to vacate the ten-year sentence because of Raulerson's cooperation.

## PROCEDURAL HISTORY

On October 16, 1986, Raulerson filed a habeas corpus petition in the district court for the Southern District of Florida, seeking to have the plea nullified because the government breached its agreements to refrain from sentencing recommendations and to guarantee the personal appearance of certain attorneys. Raulerson also claimed that the government had failed to release his Fort Pierce house from forfeiture proceeding as promised. A United States Magistrate found Raulerson's claims regarding the government's breach of the plea agreements to be without merit, except that the government's promise concerning the house had been broken.

On May 16, 1988, the district court approved and adopted the magistrate's report and recommendation directing the government "to comply with the terms of its plea agreement by making substantial, good faith efforts to return the plaintiff's property. The government shall submit a report in detail outlining its efforts with appropriate documentation within sixty days of this order."

On July 11, 1988, fifty-six days after the district court's order, Raulerson filed a notice of appeal. No further proceedings have been held in the district court because filing of the notice of appeal divested it of jurisdiction.

## CONTENTIONS OF THE PARTIES

Raulerson contends that the district court erred in finding that the government did not breach the plea agreement promise

by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that *the prisoner may be released on parole at*

to appear in court and speak in his behalf. According to Raulerson, the government obligated itself to speak only about his cooperation and to otherwise remain silent during sentencing and hearings for reduction of sentence. Raulerson also "requests further action ... by this Court to ensure the government's compliance with its agreement" to return the Fort Pierce house.

The government contends that its opposition to a sentence reduction in the Rule 35 hearing did not breach the plea agreement and in addition, the court should not reach this issue because Raulerson failed to raise it either on direct appeal or in his habeas corpus petition. Under the government's approach, the court has no jurisdiction to grant relief regarding sentencing proceedings in Tennessee. The government also contends that the court lacks jurisdiction to decide Raulerson's claims regarding the Fort Pierce house because the district court's order from which the appeal is taken is not a final judgment.

## ISSUES

The issue in this case is whether the government breached its plea agreement by opposing Raulerson's motion for reduction of sentence, or by failing to appear or properly speak for him at the Tennessee proceedings, or by failing to release the Fort Pierce house.

## DISCUSSION

To determine whether the government breached the plea agreement, we must first determine the scope of the government's promises. "The court must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea." *In re Arnett*, 804 F.2d 1200, 1202–03 (11th Cir.1986). The supplemental agreement promises (1) that the government would inform the sentencing judges in Tennessee

*such time as the commission may determine.* [Emphasis added.]
18 U.S.C.A. § 4205 (West 1985) (repealed effective November 1, 1987).

and in Florida "of the factual extent, nature, degree and quality of the defendant's cooperation...." and (2) that "Samuel J. Smargon, Timothy Discenza, Hickman Ewing, and W. James Franklin will personally appear at all sentencing hearings pursuant to this agreement in Case 81–20035W." The district court's findings on the scope of the agreement and whether the government breached its promise will only be set aside if they are clearly erroneous. *United States v. Caporale*, 806 F.2d 1487, 1516 (11th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 (1987).

### A.  Promise to Stand Mute

■ Raulerson argues that the government breached the agreement when Smargon opposed a reduction of sentence in the Rule 35 hearing, when Discenza recommended the maximum sentence in the Tennessee proceedings, and when Discenza opposed a subsequent Rule 35 motion in Tennessee. In Raulerson's Florida Rule 35 hearing, Smargon told the court, "Raulerson was one of the major, if not the major marijuana importer in Southern Florida that the government has ever arrested and prosecuted."

Raulerson argues that this court should consider statements by the government and by Raulerson's counsel during the plea agreement hearing to ascertain the full scope of the agreement. Raulerson cites a statement by Smargon in support of his contention that the government agreed not to recommend a sentence: "I think it is clear from the writing that we will not be recommending an absolute sentence on ... counts [II and V]." Raulerson also relies on his own counsel's statement during the plea hearing that "it is his [Raulerson's] understanding that the government will not in any way recommend consecutive sentences on that count nor the amount of time to be imposed on Counts II and V."

The government argues that this court should not reach the question of breach of the plea agreement in regard to the Rule 35 hearing in Florida because Raulerson failed to object to the government's conduct in that hearing either on direct appeal or in his habeas corpus petition. *See Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988) ("[w]here an issue raised on appeal by a habeas petitioner has not been advanced in the district court, it is not properly before the court of appeals.").

We need not reach the government's argument that one part of this issue was not properly preserved; we agree with the district court's finding that the plea agreement did not bind the government to remain mute at any proceeding.[5] The plea agreement merely requires the government to notify the court of the extent of Raulerson's cooperation. Even the most liberal reading of the supplemental plea agreement fails to support the interpretation that Raulerson urges. Plea negotiations involve the same give and take involved in any contractual agreement. The final memorialization of those negotiations best informs the court of the agreements the parties have reached, especially when it contains an exclusionary clause like the one in paragraph ten of the supplemental plea agreement. Only where the language of the agreement is ambiguous, or where government overreaching is alleged does the court consider parole evidence, such as the plea hearing transcript in this case. *See In re Grand Jury Proceeding*, 819 F.2d 984, 985 (11th Cir.1987). Raulerson failed to negotiate for or failed to obtain the government's silence at his sentencing hearings; thus, we hold that the government did not breach its agreement regarding standing mute.

---

**5.** The government correctly notes that in the pleadings Raulerson failed to specify Smargon's opposition to the reduction of sentence in the Rule 35 hearing in Florida as an element of the breach. Although this issue is therefore not properly before us, we note that Smargon praised Raulerson's cooperation as "extensive, full, complete, thorough and as valuable in the nature of information ... from an informant that I have ever had in my eight years of prosecution." When his comments are read as a whole, Smargon clearly suggested to the court that although his duty as the government's representative was to oppose the reduction in sentence, he personally would not be disturbed if the court granted the reduction. The court subsequently eliminated Raulerson's fine and made him eligible for immediate parole.

## B. Promise to Personally Appear

Raulerson contends that Smargon's failure to personally appear at the Rule 35 hearing in Tennessee also breached the plea agreement. The plea agreement states that "Samuel J. Smargon, Timothy Discenza, Hickman Ewing, and W. James Franklin will personally appear at all sentencing hearings...." At the time of the Tennessee hearing, Smargon had been appointed a full time United States Magistrate. The attorney handling the case after Smargon, Tom Blair, testified that he agreed to appear in Smargon's stead, but only if Raulerson agreed to pay his travel expenses. Raulerson did not agree to pay travel expenses.

The government argues that this claimed breach should not be considered because this court has no jurisdiction over the legality of the Tennessee sentence. *See Short v. United States*, 504 F.2d 63, 64 (6th Cir. 1974) (district court has no jurisdiction to test legality of sentence imposed by court in another judicial district). The government misses the point. Raulerson is not challenging his Tennessee sentence in this court under section 2255, but rather seeks the withdrawal of his guilty plea in the Florida case. The Florida plea agreement requires government action not only at Florida proceedings but also in Tennessee proceedings. Failure to act in Tennessee breaches the Florida plea agreement as to matters covered in the agreement.

The district court found that despite Smargon's absence, the government complied with the plea agreement. Agent Franklin, Federal Bureau of Investigation, appeared at the Tennessee Rule 35 hearing and testified to Raulerson's extensive cooperation. Therefore, the Tennessee court learned of Raulerson's cooperation through one of the signatories to the plea agreement. We affirm the district court's ruling, finding any breach concerning Smargon's personal appearance to have been insignificant.

## C. Promise to Release Fort Pierce House

Raulerson argues that the government's failure to release the Fort Pierce house is a breach of the plea agreement justifying the withdrawal of his plea. At oral argument, the government admitted that it is obligated to seek the release of Raulerson's Fort Pierce house. Additionally, the parties have stipulated that the United States Attorney's Office for the Southern District of Florida has contacted the Department of Justice requesting release of the house. Release of the house will cure the government's breach of the plea agreement. *See In re Arnett*, 804 F.2d at 1204.

On remand, the district court should ascertain whether the government has fully complied with the district court's order for return of the Fort Pierce house. Raulerson prevailed on this issue in the district court. Consequently, we need not determine whether the district court's order on this issue is "final."

## CONCLUSION

In summary, we hold that the government did not breach the plea agreement as to recommendations or the personal appearance of Smargon at the Tennessee proceedings. The remission of Raulerson's Fort Pierce house from forfeiture was resolved by the district court in Raulerson's favor, and we do not disturb that ruling in this appeal.

AFFIRMED and REMANDED